UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


M/V EDITH PEARL, L.L.C. and                 CIVIL ACTION
M/V DEBORAH E., L.L.C.

VERSUS                                       NO: 12-2962


ST. JOHN FLEETING, INC. and                 SECTION: "J"
ST. JOHN FLEETING, L.L.C.


## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

This is a suit seeking unpaid charter hire and damages under an alleged oral bareboat charter agreement. Plaintiffs filed suit against Defendants on December 13, 2012, alleging that Defendants bareboat chartered the two subject vessels, the M/V EDITH PEARL and the M/V DEBORAH E. At the pretrial conference, the Court determined that the issue of liability should be severed from damages.  Accordingly, on May 27, 2014, a bench trial was held solely on the issue of whether an oral bareboat charter existed between the parties during the relevant time period. At the conclusion of the trial, the Court took the matter under advisement. Upon consideration of all of the evidence and the arguments of Counsel, the Court issues the following findings of fact and conclusions of law in accordance with Rule 52(a), F.R.Civ.P.

## FINDINGS OF FACT

1. The vessels at issue in this matter are the M/V DEBORAH E (formerly named the M/V ST. CHARLES) and the M/V EDITH PEARL (formerly named the M/V LAFOURCHE). Throughout the time period relevant to this litigation, these two vessels were owned by multiple entities that were in turn owned by Mr. Sammy Zito. The vessels are currently owned by Plaintiffs M/V EDITH PEARL, L.L.C. and M/V DEBORAH E., L.L.C., which are owned by Mr. Sammy Zito.

2. Mr. Sammy Zito and Mr. Charles Metcalf together formed St. John Fleeting, Inc. in 1982, and while each individual had an interest in the company, Mr. Metcalf oversaw the day-to-day operations of the company, including managing the operations of the St. John fleet.

3. In 1985, Mr. Sammy Zito and Mr. Charles Metcalf entered into an oral agreement whereby St. John Fleeting, Inc. bareboat chartered the two subject vessels from companies owned by Mr. Sammy Zito. The fact of the bareboat charter was proved by the testimonies of Mr. Sammy Zito, Mr. Van Perkins, and Mr. Shawn O'Daniels, as well as by the bank records and spreadsheets admitted into evidence at trial.

4. After this bareboat charter agreement was confected, St. John Fleeting, Inc. exercised full control over the activities and navigation of the two subject vessels.

2

5. In 1986, Mr. Zito and Mr. Metcalf formed Riverside Ventures, Inc., which was a joint venture between St. John Fleeting, Inc. (owned fifty-percent by Mr. Zito and fifty-percent by Mr. Metcalf) and Huey P. Long Bridge Fleet, Inc. (owned by Mr. Zito and his wife).

6. In June 1986, the two subject vessels were bareboat chartered to Riverside Ventures, Inc.

7. After Riverside Ventures, Inc. ceased operating in late 1989 or early 1990, St. John Fleeting, Inc. resumed the bareboat charter of the two subject vessels under the original oral agreement between Mr. Zito and Mr. Metcalf, as shown by the testimony of Mr. Zito.

8. On October 17, 1996, St. John Fleeting, Inc. filed a limitation action in the Eastern District of Louisiana in a matter entitled *In the Matter of Huey P. Long Bridge Fleet, Inc.*, Civil Action No. 96-3479, wherein St. John Fleeting, Inc. identified itself as the bareboat charterer of the M/V LAFOURCHE (currently named the M/V EDITH PEARL) and sought limitation of liability. Based upon this allegation, the Court issued a restraining order enjoining the prosecution of claims against St. John Fleeting, Inc. in any other court.

9. In 1998, St. John Fleeting, Inc. was experiencing difficulties in its efforts to obtain marine insurance. For that

reason, Mr. Shawn O'Daniels, Mr. Russell Gaudet, Jr., and Mrs. Darla Gaudet formed an entity called River Marine Management, Inc., which obtained the necessary insurance and took over the operation of the two subject vessels.

10. On May 28, 1999, St. John Fleeting, L.L.C. was formed and took over all operations of St. John Fleeting, Inc., which ceased fleeting operations at that time.

11. St. John Fleeting, Inc. and St. John Fleeting, L.L.C. were the sole clients of River Marine Management, Inc., as shown by the testimony of Mrs. Darla Gaudet.

12. From March 1998 until February 2012, River Marine Management, Inc. paid the charter hire for the two subject vessels to the vessel owners.

13. In February 2012, River Marine Management, Inc. was placed in liquidation.

14. Mrs. Darla Gaudet, who has a fifty-percent interest in River Marine Management, Inc., testified that River Marine Management, Inc. never entered into any direct charter agreement with the vessel owners.

15. In their original answer in the instant suit, Defendants claimed that they chartered the two subject vessels prior to 1998. In their amended answer, Defendants claimed that they never bareboat chartered the vessels at any time but that River Marine

4

Management, Inc. bareboat chartered the vessels from 1998 through 2012.

## CONCLUSIONS OF LAW

1. Prior to 1998, St. John Fleeting, Inc. was the bareboat charterer of the two subject vessels, as shown by the testimonies of Mr. Sammy Zito, Mr. Van Perkins, and Mr. Shawn O'Daniels, as well as by the bank records and spreadsheets admitted into evidence at trial.

2. Additionally, the Court finds that the doctrine of judicial estoppel applies to estop Defendants from claiming that St. John Fleeting, Inc. was not the charterer of the M/V LAFOURCHE (currently named the M/V EDITH PEARL). In the Fifth Circuit, "at least two requirements must be met before a party's argument may be judicially estopped. ... First, the estopped party's position must be clearly inconsistent with its previous one, and second, that party must have convinced the court to accept that previous position." *Gabarick, et al v. Laurin Maritime Am., Inc., et al*, No. 13-30739, 2014 WL 2118621, at *2 (5th Cir. May 21, 2014) (internal citations omitted). In 1996, in a limitation action entitled *In the Matter of Huey P. Long Bridge Fleet, Inc.*, St. John Fleeting, Inc. sought limitation of liability based on its status as the bareboat charterer of the M/V LAFOURCHE (currently named the M/V EDITH PEARL). The Court accepted St. John Fleeting,

Inc.'s position and issued a restraining order enjoining the
prosecution of claims against St. John Fleeting, Inc. in any
other court. St. John Fleeting, Inc.'s argument in the instant
litigation, that it was never the bareboat charterer of either of
the two subject vessels, is clearly inconsistent with its
previous position that it was the bareboat charterer of the M/V
LAFOURCHE. Therefore, the Court finds that Defendant St. John
Fleeting, Inc. is judicially estopped from arguing that it was
not the bareboat charterer of the M/V LAFOURCHE (currently named
the M/V EDITH PEARL) at the time of *In the Matter of Huey P. Long
Bridge Fleet, Inc.*[1]

   3. The Court finds that after 1998, when River Marine
Management, Inc. was created and took over operations of the
subject vessels, St. John Fleeting, Inc. and/or St. John
Fleeting, L.L.C.[2] remained the bareboat charterer of the vessels,

---

[1] The Court has additionally considered as evidence the fact that in
their original answer, Defendants claimed that they chartered the two subject
vessels prior to 1998, but in their amended answer, Defendants claimed that
they never bareboat chartered either vessel. Because Defendants have amended
their answer, they are not bound by their original answer; however, the
original answer may be used as impeachment evidence to attack the credibility
of the party who made the allegations in the original answer. *See Jackson v.
McWilliams Dredging Co.*, 76 F.2d 795, 797 (5th Cir. 1935).

[2] On May 28, 1999, St. John Fleeting, L.L.C. took over all fleeting
operations in place of St. John Fleeting, Inc. This new entity, also
apparently owned and managed by Darla Gaudet (the daughter of Mr.
Metcalf)continued to operate and manage the same fleet, at the same location
on the Mississippi River near Garyville, using the same two vessels that had
been bareboat chartered to St. John Fleeting, Inc.  The Court therefore finds
that St. John Fleeting, L.L.C. assumed responsibility for the bareboat charter
of the two subject vessels.

as shown by the testimonies of Mr. Sammy Zito, Mr. Van Perkins, Mr. Shawn O'Daniels, and Mrs. Darla Gaudet. Defendants offered no evidence that River Marine Management, Inc. ever entered into a direct charter agreement of any kind with the vessel owners. In fact, Mrs. Darla Gaudet, who has a fifty-percent interest in River Marine Management, Inc., testified that River Marine Management, Inc. never had such a direct charter agreement. The Court finds that St. John Fleeting, Inc. and/or St. John Fleeting, L.L.C. entered into an oral sub-charter agreement with River Marine Management, Inc. whereby River Marine Management, Inc. sub-chartered the two vessels.[3] "A subcharter creates no contractual relationship between a subcharterer and the shipowner." 2 Thomas J. Schoenbaum, Admiralty & Mar. Law § 11-1 n.2 (5th ed. 2012).[4] A bareboat charterer's "basic obligation is to pay the charter hire stipulated in the charter party" and to

---

[3] The Court finds that over the years, there have actually been multiple sub-charterers of the two subject vessels, including Eckstein Marine/LaPlace Towing, Zito-Metcalf Marine Repair, and St. John Towing, Inc. Additionally, the Court notes that on October 17, 1996, in the limitation action entitled *In the Matter of Huey P. Long Bridge Fleet, Inc.*, Civil Action No. 96-3479, St. John Towing, Inc. identified itself as the sub-charterer of the M/V LAFOURCHE (currently named the M/V EDITH PEARL) and sought limitation of liability on that basis. The Court finds that when River Marine Management, Inc. entered into an oral sub-charter of the vessels, it took the place of St. John Towing, Inc. as sub-charterer, which was testified to at trial by Mrs. Darla Gaudet.

[4] "Charter parties often expressly authorize a charterer to subcharter the vessel and usually specify that a subcharter arrangement does not relieve the principal charterer of its obligations to the owner under the head or primary charter party. The owner is not in privity of contract with subcharterers who may not rely on the terms either expressed or implied in the head charter party." ROBERT FORCE, ADMIRALTY AND MARITIME LAW 50-51 (Federal Judicial Center, 2004).

return the vessel to the owner "in the same condition as received excepting ordinary wear and tear." *Id.* at § 11-3 (internal citations omitted).[5] In this case, despite the oral sub-charter by River Marine Management, Inc., and despite River Marine Management, Inc.'s payment of charter hire for several years, the ultimate responsibility for the charter hire and return of the vessels remained with St. John Fleeting, Inc. and/or St. John Fleeting, L.L.C., as the bareboat charterer, based on the original oral bareboat charter agreement between Mr. Sammy Zito and Mr. Charles Metcalf.

### CONCLUSION

Accordingly, based on the foregoing,

**IT IS HEREBY ORDERED** that the Court finds as a matter of fact and law that a valid and enforceable bareboat charter agreement existed whereby Defendant St. John Fleeting, Inc. and/or Defendant St. John Fleeting, L.L.C. bareboat chartered the two subject vessels.

**IT IS FURTHER ORDERED** that there shall be a trial on the issue of damages.

**IT IS FURTHER ORDERED** that the two pending *Motions in Limine* **(Rec. Docs. 97 & 99)** are hereby **DENIED AS MOOT.**

---

[5] Additionally, the bareboat charterer "is responsible for the proper performance of all agreements made with third parties in connection with the operation of the ship." *Id.*

New Orleans, Louisiana, this 4th day of June, 2014.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE